UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

KASAI & KOORI, LLC
AND TAYLOR G. LEVY, INDIVIDUALLY
AND LEE H. GOLDBERG, INDIVIDUALLY

    Plaintiff(s),

v.                                        Case No.

OTTOMANELLI LIC, LLC, AND
FRANK OTTOMANELLI, INDIVIDUALLY

    Defendant(s).
_____/

## COMPLAINT

**COMES NOW**, Plaintiffs, Kasai & Koori, LLC, Taylor G. Levy, Individually, and Lee H. Goldberg, individually (hereinafter referred to collectively as "Plaintiffs") by and through undersigned counsel, files this Complaint against Defendants, Ottomanelli LIC, LLC, and Frank Ottomanelli, individually (hereinafter collectively referred to as "Defendants"), and in support thereof states as follows:

## JURISDICTION AND VENUE

1. Venue is proper as this Court has general jurisdiction pursuant to 28 U.S.C. §1391(b)(2). Specific jurisdiction exists as the Defendants had minimum contacts with Palm Beach County, Florida by: (a) traveling to Florida to preview the Plaintiffs' business operations located in Palm Beach County, Florida; (b) being shown Plaintiffs' proprietary ingredients, recipes and methods of food and beverage preparation on location in Palm Beach County, Florida; (c) negotiating the specific terms of the contract at the Plaintiffs' location in Palm Beach

County, Florida; and (d) the damages have occurred and continue to occur in Palm Beach County, Florida.

2. This Court has subject matter jurisdiction over this action for two independent reasons: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331; and (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## PLANITIFFS

3. Plaintiff, Kasai & Koori, LLC ("K&K") is a Florida Limited Liability Company authorized to do business in New York.

4. Plaintiff Lee H. Goldberg ("Goldberg" or "LHG") is an individual and is a resident of the State of Florida, Palm Beach County, and is otherwise *sui juris*. LEE H. GOLDBERG is a lawyer and a member of the Bars of Florida, Pennsylvania, and New York.

5. Plaintiff, Taylor G. Levy ("Levy") is an individual and is a resident of the State of Florida, Palm Beach County, and is otherwise *sui juris.*

## DEFENDANTS

6. Defendant, Frank Ottomanelli ("Ottomanelli") is an individual, and is a resident of the State of New York, is a Member of Ottomanelli LIC, LLC and is otherwise sui juris.

7. Defendant Ottomanelli LIC, LLC. ("OLIC") is a limited liability company organized under the laws of the State of New York, having its company office located in 60-15 Woodside Avenue, Woodside, Queens County, New York 11377.

## BACKGROUND

### Frank Ottomanelli and Ottomanelli LIC, cultivate Lee H. Goldberg and Taylor Levy as a source of expertise and to obtain valuable services and intellectual property for their restaurant businesses

8. Goldberg and Levy have been engaged in the food and beverage business for many years.

9. Goldberg is the co-founder of an international franchised restaurant chain, Burgerfi International, LLC, that is publicly traded. Goldberg is a co-founder and co-manager of a chain of restaurants known as Kasai & Koori, that is also franchising restaurants, nationwide. Goldberg is also a lawyer having engaged in the practice of law for over 52 years and an entrepreneur having a high level of expertise in the entertainment, digital media platforms, media technology, the restaurant industry and in particular the fields of franchising and business organizations. Goldberg is a member, in good standing, of the Bars of the State of New York, the State of Florida, and the Commonwealth of Pennsylvania.

10. Levy is a co-founder and co-manager of K&K. He was or is currently a franchisee of Burgerfi International and Golden Coral. Levy along with Goldberg, is a co-founder and co-manager of a chain of restaurants known as Kasai & Koori, that is also franchising restaurants, nationwide. He is skilled in all aspects of the food and beverage industry. He has years of expertise in property management and development.

11. The Defendant, Frank Ottomanelli, owns a small restaurant in Woodside, New York that primarily, features hamburger and chicken sandwiches.

12. In or about January, 2022 Goldberg was contacted by Ottomanelli regarding a license for a concession at Hunters Point Park South ("HP") located in Long Island City, Queens County, New York.

13. Ottomanelli met with LHG, in Delray Beach, Florida. to discuss the Hunters Point Venture. Ottomanelli asked Goldberg to review the proposed HP License Agreement as he knew of Goldberg's expertise from prior matters in which he interfaced with Goldberg

14. During the conversation, Ottomanelli described the HP License and the huge financial opportunities he believed it presented. Ottomanelli posited that he would like Goldberg to become a partner in the HP venture.

15. Goldberg suggested that the parties develop a concept that integrated the concepts of Kasai & Koori and F. Ottomanelli Burgers and Belgian Fries ("Combined Concept").

16. Ottomanelli traveled to the headquarters of K&K in Delray Beach Florida. He toured the various K&K restaurants, its warehouse that housed the K&K equipment and K&K's company offices. It was at the K&K Offices in Palm Beach County, Florida that the Parties agreed to the Combined Concept.

17. Ottomanelli sent his daughter, Tatianna Ottomanelli to visit the K&K facilities in Palm Beach County, Florida. There, she met with the LHG and TGL. She toured and sampled the signature K&K menu items of Poke, Crispy Rice, Bao Buns, Taiyaki sandwiches, Boba Teas, Kakigori and Taiwanese Shaved Ice. During this meeting, the logistics menu, and other matters relating to the combined Concept, were planned for HP.

18. Based upon the agreement with Ottomanelli, LHG introduced TL into the HP License Transaction to work with Ottomanelli and Goldberg on the Combined Concept and the Parties began the process of designing the Combined Concept.

19. Goldberg was designated, by Ottomanelli, to negotiate the terms and conditions of the HP License with the New York City Parks Department ("Parks"), for the Combined Concept.

20. LHG and TL made numerous trips from their K &K headquarters in Delray Beach, Florida to HP to evaluate the HP facility and to meet with representatives of Parks to discuss the establishment of the Combined Concept.

21. It was agreed, by the Parties, that K&K would own a 49% in OLIC. It was further agreed that TGL & LHG would manage and control the day-to-day operations of HP and that all major decisions in Company governance would require a unanimous vote of the Members. The issue of the expanded ownership of Kasai & Koori in OLIC was disclosed to representatives of Parks.

22. The representatives of Parks had Goldberg and Levy submit an amendment to NYC PASSPORT to indicate the change of ownership of OLIC.

23. Additionally, LHG was charged with working with outside counsel to obtain the alcoholic beverages licenses. In fact, Ottomanelli requested that Kasai & Koori pay a retainer to said counsel. Kasai &Koori has paid the $5,000.00 retainer and LHG has executed the retainer agreement. Otttomanelli was also required to execute said retainer letter. It is unknown if he did so.

24. email, to Ottomanelli, that set forth the material terms and conditions of their relationship to the Combined Concept ("Agreement"). Ottomanelli agreed by return email. (See **Exhibit "A"**).

25. Park asked if the Parties could open the HP Concession for the Memorial Day holiday weekend under a temporary license ("TUA"). LHG negotiated this TUA with Parks.

26. LHG and TGL have performed all of their obligations under the said agreement.

27. The HP concession was fully opened, by the Plaintiffs, to the public, as agreed, on May 28, 2022. Ottomanelli was not present for the opening of the HP concession.

28.     Sometime after Ottomanelli agreed to the Agreement, he gave an interview to a reporter from the LIC Post ("Article"), (See **Exhibit "B"**).

29.     in direct contravention to the general instructions, he received from LHG. Parks had previously directed the Parties not to publicize anything regarding the HP License until after the Public Hearing, on the HP License, scheduled for June 6, 2022.

30.     Moreover, in the said Article, Ottomanelli, tortuously misappropriated the proprietary property of K&K, by taking ownership, to the public, of the signature menu items that Kasai & Koori were contributing to the Combined Concept.  The Article published Ottomanelli's quotes to the reporter:

> "Ottomanelli said the café will offer some favorites from his Woodside establishment such as beef burgers, veggie burgers, and Belgian fries. The menu will also consist of poke bowls and crispy rice with fish.
>
>  "Ottomanelli said the cafe he will also be serving a range of bubble teas with its ingredients being imported from Japan. He said he traveled to Japan to taste the ingredients and to secure a supply line for his café"

31.     Besides willfully violating the instruction by LHG of not granting interviews until the HP License was issued, it is apparent from the said Article that Ottomanelli willfully and maliciously converted and/or misappropriated or has attempted to convert and /or misappropriate the signature menu items that are attributable to Kasai & Koori in the Combined Concept.

32.     Ottomanelli has never offered poke, crispy rice or bubble (Boba) at any restaurant in which he may have been involved. To the contrary, he never tasted Bubble Tea until May 28, 2022 when the Plaintiffs served it to him at HP.

33. Ottomanelli, besides converting ownership of Kasai & Koori's menu items he has uttered false statements that have already cast Kasai & Koori into public disrepute. Ottomanelli falsely claims he" traveled to Japan to taste the ingredients (of Bubble Tea) and secure a line of supply."

34. The statements of Ottomanelli in #30, above, are totally false. Ottomanelli has never been to Japan to taste bubble tea.  As stated above, he first tasted it on May 28,2022 at HP. His statements are further actionable because Bubble or BobaTea emanates from the country of Taiwan, not Japan. It is the signature product that Kasia & Koori has developed, marketed, sold to the public and has sourced its ingredients, by travels of LHG and TGL to Taiwan to personally meet with manufacturers of bubble tea ingredients. Ottomanelli had no knowledge of the ingredients of Bubble tea when he gave the aforesaid interview. He was acting as Plaintiffs' partner when he gave the interview to The LIC Post and intentionally made no mention of the Combined Concept of the Plaintiffs, in any way.

35. In fact, LHG and TGL previously related to Ottomanelli that they had made many trips to the Far East to develop their concept menu for Kasai & Koori. Their development history is unique and is set forth on their web site and in their franchise promotion decks. The Plaintiff's brand development of K&K is a major attribute of the culture of Kasai & Koori that was created at great expense in terms of capital and labor by LHG and TGL. Additionally, The Plaintiffs have sourced all the products for their unique Kasai & Koori menu, at great expense. The source of it products and equipment is proprietary confidential information owned by K&K.

36. As a result of Ottomanelli's actions and utterances, referenced above, the Plaintiffs have suffered a business defamation or trade liable.

37.     As soon as the Article was published, adverse comments were posted regarding the fact that the owner of this restaurant should know that Boba tea comes from Taiwan and not Japan. The false statements published by Ottomanelli has caused the K&K brand, as it applies to HP and otherwise, to be denigrated in the public. The Plaintiffs are aware of the national sensitivities that exist between Taiwan and Japan. The Plaintiffs have been most careful not to intrude or impact such sensitivities in any of K&K's past actions, marketing, brand development, and other attributions.

38.     Remarkably, on May 25, Ottomanelli republished the Article by sending it to Kathleen Wright, the Director of Production Operations for Macys Inc. The Parties are currently in negotiations to cater the Macy's New York July 4th Fireworks Event at HP. Notably, Ottomanelli did not copy LHG or TGL on this email.

39.     Ottomanellis actions were reckless and in total disregard of the impact of his statements upon the K&K brand. His statements in the Article had one purpose, the self-aggrandizement of the Defendant, Frank Ottomanelli.

40.     On May 28, 2022, after the first day of the opening of HP for business to the public, Plaintiffs LHG and TGL brought the matter of the Article to Ottomanelli's attention. His reaction was very hostile, and his response was to demand that the Plaintiffs post $500,000.00 in the bank account of OLIC or else he was "throwing the Plaintiffs out of the HP Licensed Premesis and out of the HP Venture.

41.     To date, the Plaintiffs have provided services and funds beyond what was anticipated by the Agreement. As an example, Ottomanelli did not attend the opening of HP. LHG and TGL attempted to locate him because he failed to properly staff the HP restaurant. Therefore,

in addition to the Kasai & Koori Menu products, LHG and TGL assisted with the production and sale of Ottomanelli menu items and their actual sale to the HP concession's customers.

42. Ottomanelli had invited LHG to stay at his apartment to save the Company the expense of housing for LHG while he was in New York working on the Combined Concept. Ottomanelli has now ordered LHG to leave his apartment, presumably for having called out Ottomanelli for his actions referenced herein.

43. The actions of Ottomanelli were designed to conceal, defraud, convert, dilute or otherwise diminish the interest and/or the value of such interest that LHG and TGL have in K&K and the Combined Concept.

44. Ottomanelli, by his willful actions, has caused and will continue to cause the Plaintiffs severe economic damage and potential liability to governmental entities and other third parties.

45. Ottomanelli, by his willful actions breached the Agreement between the Parties.

## CLAIMS FOR RELIEF

### COUNT I
### CLAIM FOR BREECH OF CONTRACT

46. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 45 above.

47. Based upon the allegations alleged above as well as the Agreement, the Defendants have received valuable services, funds and other valuable consideration from Plaintiffs the Defendants have anticipatorily breached the Agreement in one or more of the following material ways: failing to perform the appearance, supervision and staffing functions Defendants agreed to contribute for the combined concept; and, by demanding consideration that was never articulated in any agreement; and, attempting to extort a payment of $500,000.00 from the Plaintiffs under threat of expelling the Plaintiffs from the HP transaction. All of this wrongful conduct occurred

after Plaintiffs delivered a turn-key operating business with substantial valuable proprietary information contributed by Plaintiffs.

48. A valid Agreement existed between the Parties. The Plaintiffs performed and contributed the agreed upon consideration pursuant to the Agreement.

49. Furthermore, The Defendant Ottomanelli has breached the Agreement by failing to provide adequate staffing and supplies to accommodate the Combined Concept's customers.

50. Plaintiffs have been damaged by Defendants' breaches

51. Plaintiffs are entitled to recover damages from Defendants.

**WHEREFORE**, Plaintiff demands a judgment for damages against the Defendants, plus costs, interest, and whatever further relief this Court deems just.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## AGAINST FRANK OTTOMANELLI

52. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 45 above.

53. Ottomanelli, individually and as an agent of OLIC induced the Plaintiffs to expend significant amounts of time, effort, money and proprietary information in exchange for his promise of membership and equity interests in OLIC together with Ottomanelli's promises of valuable contributions to the Combined Concept.

54. Plaintiff's reasonably and justifiably relied upon Defendants' representations.

55. The overt and willful improper actions by Ottomanelli, as detailed herein, demonstrate that Ottomanelli never intended to fulfill his promises and representations that he made to the Plaintiffs.

56. Had the Plaintiffs known the true facts set forth above, the Plaintiffs would not have expended the time, effort and money as detailed herein.

57. The Plaintiffs have been damaged as a proximate result of the fraudulent representations and material misstatements alleged herein.

**WHEREFORE**, Plaintiffs demand a judgment for damages against Defendants, plus costs, interest, and whatever further relief this Court deems just.

### COUNT III – FRAUD IN THE INDUCEMENT AS TO ALL DEFENDANTS

58. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 45 above.

59. Ottomanelli, individually and as an agent of OLIC induced the Plaintiffs to expend significant amounts of time, effort, money and proprietary information in exchange for his promise of membership and equity interests in OLIC.together with Ottomanelli's promises of valuable contributions to the Combined Concept.

60. Plaintiff's reasonably and justifiably relied upon Defendants' representations.

61. The overt and willful improper actions by Ottomanelli, as detailed herein, demonstrate that Ottomanelli never intended to fulfill his promises and representations that he made to the Plaintiffs.

62. Had the Plaintiffs known the true facts set forth above, the Plaintiffs would not have expended the time, effort and money as detailed herein.

63. The Plaintiffs have been damaged as a proximate result of the fraudulent representations and material misstatements alleged herein.

**WHEREFORE**, Plaintiffs demand a judgment for damages against Defendants, plus costs, interest, and whatever further relief this Court deems just.

### COUNT IV –DEFAMATION AS TO OTTOMANELLI

64. Plaintiffs repeats and realleges the allegations in paragraphs 1 through 45 above.

65. As more fully set forth above, Ottomanelli has uttered statements, which he knew would be published, and disseminated, both in print and electronically, that were false and untrue.

66. The false and untrue statements uttered by Ottomanelli have caused the Plaintiffs to suffer actual damages, embarrassment and disrepute within the community in which the Plaintiffs do business.

67. Tomanelli knew the statements that he made to the LIC Post were false and untrue at the time he made said statements.

   a. He intended the said statements to be published.

   b. The statements were made willfully with reckless disregard for their truthfulness or veracity. The overt implication that he would personally benefit from the untrue statements.

   c. That the statements clearly related to the Combined Concept and that adverse public comments were drafted and published on-line that directly impacted and denigrated the Plaintiffs reputation and standing in the commercial setting in which Plaintiffs operate their business

**WHEREFORE**, Plaintiffs requests an order for a judgment, for damages against the Defendants, plus costs, interest, attorney's fees and whatever further relief this Court deems just.

## DEMAND FOR JURY TRIAL

68. Plaintiffs demand a trial by jury of all issues so triable as of right.

Dated: June 2, 2022

Respectfully submitted,                              By: /s/ Donald J. Thomas

                                                     Donald J. Thomas, Esq.
                                                     Florida Bar No. 834599
                                                     Georgia T. Garnecki, Esq.
                                                     Florida Bar No. 0068807

CBR Law Group, LLLP
Fifth Avenue Place
55 N.E. 5th Avenue
Suite 503
Boca Raton, FL  33432
Telephone: 561.609.1515
Facsimile: 561.368.0293
don@cbrlawgroup.com
georgia@cbrlawgroup.com
paralegal@cbrlawgroup.com

*Attorneys for Plaintiffs*